IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

JACK A. NISSIM,    No. C 14-1128 CW

    Plaintiff,    ORDER GRANTING
WELLS FARGO'S
  v.    MOTION TO DISMISS
(Docket No. 14)
WELLS FARGO BANK, N.A,

    Defendant.
_____/

    Plaintiff Jack A. Nissim asserts various mortgage-related claims against Defendant Wells Fargo Bank, N.A.  Wells Fargo moves to dismiss Plaintiff's first amended complaint (1AC).  Plaintiff opposes the motion.  Having considered the papers filed by the parties, the Court GRANTS Wells Fargo's motion.

## BACKGROUND

### I. Factual Background

    The following facts are taken from the 1AC and certain documents of which the Court takes judicial notice.[1]

    In approximately December 2004, Plaintiff entered into a loan transaction with Wells Fargo for the purchase of property located at 1438 28th Avenue in San Francisco, California.  1AC ¶ 8.

---

[1] With its motion, Wells Fargo has asked that the Court take judicial notice of various documents, including documents related to Plaintiff's mortgage and foreclosure, his prior related state court and federal court actions and his bankruptcy cases. Plaintiff does not oppose or object to Wells Fargo's requests and the Court grants them.  Plaintiff has asked the Court to take judicial notice of additional documents related to Plaintiff's prior related federal court action and his bankruptcy cases. Wells Fargo dos not oppose or object to Plaintiff's requests and the Court grants them.  The Court also takes judicial notice of the dockets of the three bankruptcy cases that Plaintiff has filed in this district.

Plaintiff originally sought a loan with a fixed interest rate but was induced to enter into a loan agreement with an adjustable interest rate based on promises that he could later refinance the property with a fixed interest rate. Id. The loan included a penalty for early refinancing if he refinanced the property within three years. Id.

In approximately December 2005, Plaintiff was assisted by Atlantic Bancorp, a real estate broker, and its representative, Nicholas Dudum, in investigating loan options to purchase property in New Mexico. Id. at ¶ 9. Dudum represented to Plaintiff that he and Atlantic Bancorp were agents of Wells Fargo and that they could refinance his loan with Wells Fargo to obtain money to purchase the New Mexico property. Id. Plaintiff told Atlantic that he could not refinance his loan with Wells Fargo because of the early refinancing penalty. Id. In response, Atlantic told him that, as an agent of Wells Fargo, it could speak with Wells Fargo about an early refinancing. Id. Plaintiff did not speak to anyone at Atlantic about this any further. Id.

In approximately March 2006, when Plaintiff received his monthly mortgage bill, he "was understandably shocked" to notice that the payment amount had increased and that the "total amount due on the loan was much higher." Id. at ¶ 10. "At this moment, Plaintiff discovered that instead of merely exploring financing options for property in New Mexico, Atlantic Bancorp and Dudum, through Wells Fargo, had actually refinanced Plaintiff's Property without his knowledge." Id.

Plaintiff alleges that "escrow was closed and recorded without Plaintiff's knowledge or his signatures on any of the

2

documents that appear to be notarized". Id. at ¶ 11. Plaintiff alleges that, as a result of the "unauthorized refinancing," he was "penalized for violating the early refinancing clause of his original loan." Id. at ¶ 12.

The "terms of the new loan were worse than the original loan." Id. at ¶ 13. Specifically, the "principal and interest rate on the forged note was worse than the original note." Id. "The interest [on] the second loan [was] also excessive." Id. The monthly payments that he "was asked to make under the new loan were . . . less than the monthly interest accumulations." Id. "Paying this amount caused Plaintiff to amass arrears on every payment he made." Id. Plaintiff alleges that the unfavorable terms of the new loan are "strong evidence that the new loan was forged since no one would refinance into terms worse than their original loan terms." Id.

Plaintiff alleges that Wells Fargo was "aware of the forgery and the agent of the companies that forged Plaintiff's signatures" and yet it "continues to hold Plaintiff liable and seeks to foreclose on the Property." Id. at ¶ 14. The "actual terms of the 'forged note'" were "concealed from and never released to Plaintiff." Id. "Nevertheless, Plaintiff attempted to arrange . . . terms that would have been acceptable and was unable to do so." Id. Plaintiff alleges that, in spite of his attempts to notify Wells Fargo "about the forgery and despite Plaintiff alerting Wells Fargo that the Note and Deed of Trust was void, Wells Fargo sought to foreclose on Plaintiff's Property." Id. at ¶ 15. A notice of default was recorded on November 1, 2011 and, on February 14, 2014, Wells Fargo recorded a notice of trustee's

3

sale with a sale date of March 10, 2014. Id. at 16. The property was sold on March 11, 2014. Id. at 17.

Plaintiff's 1AC alleges claims for (1) wrongful foreclosure in violation of California Civil Code § 2924, et seq.; (2) violation of California Civil Code § 2924.17; and (3) unjust enrichment.

II. Procedural History

On September 27, 2007, Plaintiff filed a complaint in San Francisco Superior Court against World Savings Bank, which is the predecessor in interest to Wells Fargo, Dudum, Atlantic Bancorp, Cal State 9 Credit Union and others. Defendants Request for Judicial Notice (DRJN), Ex. O. In his complaint, Plaintiff alleged that Dudum and Atlantic Bancorp had first advised him to refinance his loan with World Savings but later advised him to enter into a second mortgage with Cal State 9 Credit Union and that it was the loan agreement with the latter that was forged. He also alleged that World Savings had overcharged him on the first loan, but did not allege that any mortgage agreement with World Savings had been forged.

On February 20, 2008, Plaintiff filed for bankruptcy in the Bankruptcy Court in the Northern District of California. DRJN, Ex. P. On October 1, 2008, the bankruptcy trustee removed the state court action to bankruptcy court. Id. On December 9, 2008, the bankruptcy court granted the trustee's petition to abandon the claims that were the subject of the state court action. Id.

On December 10, 2008, the bankruptcy trustee filed a notice of dismissal in the removed action, which stated, "[H]aving

4

obtained an order authorizing her to abandon the claims set forth in this adversary proceeding, the trustee hereby dismisses this adversary proceeding without prejudice." Docket No. 7, <u>Nissim v. Cal. State 9 Credit Union</u>, Adversary Proceeding No. 08-3115.

On January 29, 2009, the bankruptcy court granted Plaintiff a discharge. Docket No. 87, <u>In re Jack Albert Nissim</u>, Pet. No. 08-30265.

On November 1, 2011, NDEX West, as agent for Wells Fargo, the beneficiary of the deed of trust on the 28th Avenue property, recorded a notice of default and election to sell, stating that Plaintiff was in default of the December 2005 note. DRJN, Ex. H.

On December 5, 2011, a substitution of trustee was recorded, substituting NDEX West in place of the original trustee. DRJN, Ex. I.

On January 31, 2012, NDEX West recorded a notice of trustee's sale, stating that the property would be sold on February 22, 2012 at 2:00 p.m. DRJN, Ex. J.

On February 7, 2012, Plaintiff filed a complaint in San Francisco Superior Court, naming Wells Fargo as the only Defendant. DRJN, Ex. M. However, like his 2007 state court complaint, Plaintiff's 2012 state court complaint alleged that Dudum and Atlantic Bancorp had first advised Plaintiff to refinance his loan with World Savings but later advised him to enter into a second mortgage with Cal State 9 Credit Union and that it was the loan agreement with the latter that was forged.

On February 22, 2012, the day on which the trustee's sale was set, Plaintiff filed his second bankruptcy petition. DRJN, Ex. Q. On March 9, 2012, this bankruptcy case was dismissed due to

5

Plaintiff's failure to file various required documents, including his bankruptcy schedules. Id.

On March 9, 2012, Wells Fargo removed the 2012 state court complaint to federal court. See NDCA Case No. 12-1201, Docket No. 1. On April 6, 2012, Plaintiff filed his first amended complaint, adding as Defendants First American, Atlantic Bancorp and Dudum.[2] DRJN, Ex. S. The First Amended Complaint linked Plaintiff's allegations of forgery to Wells Fargo for the first time. Plaintiff asserted five claims against all Defendants: (1) quiet title; (2) reformation of contract; (3) wrongful foreclosure in violation of California Civil Code § 2924, et seq.; (4) slander of title; and (5) equitable indemnity. On April 20, 2012, Wells Fargo filed its first motion to dismiss the 1AC in the 2012 case. NDCA Case No. 12-1201, Docket No. 17.

On April 23, 2012, Plaintiff filed his third bankruptcy petition. DRJN, Ex. R. On June 14, 2012, the Chapter 7 Trustee filed a report of no distribution in Plaintiff's third bankruptcy case, certifying that his estate has been fully administered and that there were no assets available for distribution. Id. On July 13, 2012, the United States Trustee filed a motion for denial of discharge in Plaintiff's third bankruptcy case, arguing that a debtor cannot receive a discharge under Chapter 7 if the debtor

---

[2] Plaintiff voluntarily dismissed his claims against Atlantic Bancorp and Dudum in his 2012 case and he did not name them as defendants in the instant case. The Court granted First American's motion to dismiss the first amended complaint in the 2012 case and granted Plaintiff leave to amend. Plaintiff did not name First American as a defendant in his second amended complaint in the 2012 case, and he has not named it as a defendant in the instant case.

6

1  has previously obtained a discharge in a case commenced within
2  eight years of the current case.  Id.  On August 7, 2012, the
3  Bankruptcy Court granted the United States Trustee's unopposed
4  motion and denied Plaintiff's discharge.  Id.
5      Wells Fargo moved to dismiss the first amended complaint in
6  the 2012 case.  On January 17, 2013, the Court granted Wells
7  Fargo's motion to dismiss and granted Plaintiff leave to amend.
8  NDCA Case No. 12-1201, Docket No. 47.
9      On January 31, 2013, Plaintiff filed his second amended
10 complaint in the 2012 case.  The second amended complaint asserted
11 three claims against Wells Fargo: (1) quiet title; (2) wrongful
12 foreclosure in violation of California Civil Code § 2924, et seq.;
13 and (3) slander of title.  Plaintiff alleged that his "Property
14 has not been sold yet and he is still in possession of the
15 Property."  DRJN, Ex. T at ¶ 22.
16     Wells Fargo filed a motion to dismiss the second amended
17 complaint in the 2012 case, arguing that Plaintiff lacked standing
18 to assert the claims contained in his second amended complaint
19 because he was his third bankruptcy case was still open, that his
20 allegations were not plausible on their face, that he was estopped
21 from bringing the claims due to his failure to schedule the claims
22 in his first or third bankruptcy and that he had not sufficiently
23 plead the elements of any of his causes of action.
24     On April 8, 2013, the Court granted Wells Fargo's motion to
25 dismiss the second amended complaint in the 2012 case.
26 Plaintiff's Request for Judicial Notice (PRJN), Ex. 1.  The Court
27 found that Plaintiff lacked standing, based on his ongoing
28 bankruptcy proceedings.  Nonetheless, the Court addressed certain

7

other arguments raised by Wells Fargo.  Specifically, the Court found that Plaintiff failed to state a claim for quiet title.  Because the Court had dismissed that claim in its order dismissing the first amended complaint and Plaintiff had not remedied the deficiencies, the Court dismissed the claim with prejudice.  The Court also noted that Plaintiff's wrongful foreclosure sale claim failed because, under California law, the trustee's sale must be completed before a trustee may be held liable for wrongful foreclosure.  In conclusion, the Court stated, "Dismissal is without prejudice to refiling if Plaintiff schedules his claims and they are abandoned by the bankruptcy trustee, except that Plaintiff may not renew the quiet title claim and, prior to any foreclosure sale, may not renew his claim for damages for wrongful foreclosure."  PRJN, Ex. 1 at 16.  The clerk entered judgment in favor of Wells Fargo and against Plaintiff, providing that Plaintiff "take nothing, that the action be dismissed on the merits, and that the Defendants shall recover from Plaintiff their costs of action."  NDCA Case No. 12-1201, Docket No. 56.

On April 23, 2013, Plaintiff amended his bankruptcy schedule to include his claims against Defendant in the bankruptcy estate.  PRJN, Ex. 2.  Plaintiff included a contingent claim described as "Claim against Wells Fargo Bank[,] First American Title, and Cal State 9 Credit Union for, among other claims, Reformation of Contract, Slander of Title, Wrongful Foreclosure, and Quiet Title. The entire market value is claimed as an asset.  Debtor's actual recovery by judgment is not limited by this estimate and he claims the entire market value of the claim."  Id. at 3.  Without taking

8

any other actions, the Bankruptcy Court entered its final decree and closed the bankruptcy case on November 7, 2013. PRJN, Ex. 3.

Plaintiff initiated this case on February 28, 2014 in San Francisco Superior Court, naming Wells Fargo as the only Defendant. The complaint alleged claims of wrongful foreclosure, cancellation of a void instrument and unjust enrichment. On March 10, 2014, Wells Fargo removed the instant action to federal court and, on March 24, 2014, it filed a motion to dismiss the complaint. On March 14, 2014, Plaintiff filed his 1AC, alleging claims of wrongful foreclosure, violation of California Civil Code § 2924.17 and unjust enrichment. On May 1, 2014, Wells Fargo filed the instant motion to dismiss.

## LEGAL STANDARD

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). On a motion under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). In considering whether the complaint is sufficient to state a claim, the court will take all material allegations as true and construe them in the light most favorable to the plaintiff. NL Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986). However, this principle is inapplicable to legal conclusions; "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not taken as true. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 555).

9

When granting a motion to dismiss, the court is generally required to grant the plaintiff leave to amend, even if no request to amend the pleading was made, unless amendment would be futile. Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc., 911 F.2d 242, 246-47 (9th Cir. 1990). In determining whether amendment would be futile, the court examines whether the complaint could be amended to cure the defect requiring dismissal "without contradicting any of the allegations of [the] original complaint." Reddy v. Litton Indus., Inc., 912 F.2d 291, 296 (9th Cir. 1990).

## DISCUSSION

Wells Fargo seeks to dismiss Plaintiff's 1AC in its entirety. Wells Fargo argues that Plaintiff's claims are barred by res judicata, that Plaintiff lacks standing to assert the claims contained in the 1AC because of his bankruptcy filings and that he is estopped from bringing the claims due to his failure to schedule the claims in his first and third bankruptcy proceedings. Wells Fargo further argues that Plaintiff's claims are time-barred because they are based on the alleged forgery, which occurred in 2005 and was discovered in 2006, or are barred by laches. Even if Plaintiff's complaint does not fail for these reasons, Wells Fargo argues that Plaintiff's complaint does not meet the plausibility standard set out in Rule 8, Federal Rules of Civil Procedure. Finally, Wells Fargo argues that each of Plaintiff's individual claims fails.

10

I.   Res Judicata

Wells Fargo argues that Plaintiff's complaint is barred by the doctrine of res judicata based on the 2012 case previously dismissed by this Court.

The doctrine of res judicata, or claim preclusion, prohibits the re-litigation of any claims that were raised or could have been raised in a prior action. Tahoe-Sierra Pres. Council v. Tahoe Reg'l Planning Agency, 322 F.3d 1064, 1077 (9th Cir. 2003). The purpose of the doctrine is to "relieve parties of the cost and vexation of multiple law suits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication." Marin v. HEW, Health Care Fin. Agency, 769 F.2d 590, 594 (9th Cir. 1985) (quoting Allen v. McCurry, 449 U.S. 90, 94 (1980)). Res judicata may be raised on a motion to dismiss when doing so does not raise any disputed issues of fact. Scott v. Kuhlmann, 746 F.2d 1377, 1378 (9th Cir. 1984).

Three elements must be present in order for res judicata to apply: (1) an identity of claims; (2) a final judgment on the merits; and (3) the same parties or their privies. Allen, 449 U.S. at 94. Plaintiff argues that there was no final judgment on the merits because the Court dismissed at least some of his claims without prejudice. However, as Wells Fargo points out, the Court dismissed Plaintiff's quiet title claim with prejudice. Moreover, the Court entered judgment in favor of Wells Fargo and the judgment specifically indicated that the action was dismissed on the merits. To the extent that the Court dismissed Plaintiff's claims without prejudice, it was only those claims that were

11

actually plead in the 2012 case.  All other claims could have been, but were not, brought in the original suit.

An identity of claims exists when two suits arise from the same transactional nucleus of facts.  Tahoe-Sierra, 322 F.3d at 1078.  Two events are part of the same transaction or series of transactions where the claims share a factual foundation such that they could have been tried together.  Western Systems, Inc. v. Ulloa, 958 F.2d 864, 871 (9th Cir. 1992).  "Different theories supporting the same claim for relief must be brought in the initial action."  Id.  Plaintiff's claims for violation of California Civil Code § 2924.17 and unjust enrichment are based on the same allegations that the refinance of his loan was obtained through forgery.  Accordingly, they are barred by res judicata and will be dismissed with prejudice.

II.  Standing

"Upon a declaration of bankruptcy, all of a petitioner's property becomes the property of the bankruptcy estate," including "'all legal or equitable interests of the debtor in property,' which has been interpreted to include causes of action."  Flowers v. Wells Fargo Bank, N.A., 2011 U.S. Dist. LEXIS 75429, at *7-8 (N.D. Cal.) (citing, among other authority, 11 U.S.C. § 541(a); Sierra Switchboard Co. v. Westinghouse Elec. Corp., 789 F.2d 705, 707 (9th Cir. 1986)).  "Accordingly, a bankruptcy petitioner loses standing for any causes of action and the estate becomes the only real party in interest unless the bankruptcy trustee abandons the claims."  Id. at *8 (citing In re Lopez, 283 B.R. 22, 28-32 (9th Cir. 2002); In re Pace, 146 B.R. 562, 565-66 (9th Cir. 1992)).

12

1  The petitioner may re-gain standing if the bankruptcy trustee
2  abandons the claims.  See, e.g., Rowland v. Novus Fin. Corp., 949
3  F. Supp. 1447, 1454 (D. Haw. 1996).  "Property of a bankruptcy
4  estate can be abandoned by three methods: (1) after notice and
5  hearing, the trustee may unilaterally abandon property that is
6  'burdensome . . . or . . . of inconsequential value' (11 U.S.C.
7  § 554(a)); (2) after notice and hearing, the court may order the
8  trustee to abandon such property (11 U.S.C. § 554(b)); (3) any
9  property which has been scheduled, but which has not been
10 administered by the trustee at the time of closing of a case, is
11 abandoned by operation of law. (11 U.S.C. § 554(c).)"  Cloud v.
12 Northrop Grumman Corp., 67 Cal. App. 4th 995, 1003 (1998).
13      Although Plaintiff filed an amended bankruptcy schedule,
14 including his claim for wrongful foreclosure, Defendant argues
15 that there is no indication on the bankruptcy docket that the
16 trustee has abandoned the claim.  However, the bankruptcy court
17 closed the bankruptcy case on November 7, 2013.  At that time, the
18 trustee had not taken any action on the case listed in the amended
19 schedule.  Accordingly, the claim has been abandoned pursuant to
20 11 U.S.C. § 554(c).  The Court finds that this is sufficient to
21 establish that Plaintiff has standing to pursue his wrongful
22 foreclosure claim.
23 III. Judicial Estoppel
24      Defendant further argues that the amended schedule was not
25 sufficient to give the trustee and creditors notice of the claim.
26 Accordingly, Defendant asserts that Plaintiff should be judicially
27 estopped from pursuing his claim.  "[J]udicial estoppel is an
28 equitable doctrine invoked by a court at its discretion."  New

13

Hampshire v. Maine, 532 U.S. 742, 750 (2001) (internal quotation marks omitted). "[I]ts purpose is to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment." Id. at 749-50 (citation and internal quotation marks omitted). "[S]everal factors typically inform the decision whether to apply the doctrine in a particular case." Id. at 750. "First, a party's later position must be 'clearly inconsistent' with its earlier position." Id. "Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled." Id. (internal quotation marks omitted). "A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." Id. at 751. "In enumerating these factors, we do not establish inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel. Additional considerations may inform the doctrine's application in specific factual contexts." Id.

In the bankruptcy context, the Ninth Circuit has held, "If a plaintiff-debtor omits a pending (or soon-to-be-filed) lawsuit from the bankruptcy schedules and obtains a discharge (or plan confirmation), judicial estoppel bars the action." Ah Quinn v. County of Kauai DOT, 733 F.3d 267, 271 (9th Cir. 2013). To the extent that Defendant's argument is based on Plaintiff's failure to schedule his claim against Defendant in his third bankruptcy

14

proceeding, the Court finds that judicial estoppel does not apply because Plaintiff did not obtain a discharge or plan confirmation in that bankruptcy proceeding.  Instead, the bankruptcy court granted the trustee's motion for denial of discharge.  See DRJN, Ex. R.  Without the discharge, Defendant cannot establish that it or any other creditor has experienced an unfair detriment based on Plaintiff's failure to schedule the claim.

Defendant also argues that "Plaintiff failed to schedule the claims against Wells Fargo in the [first] Bankruptcy Action, but instead scheduled an identical claim against another lender, and sued that lender in state court."  Motion to Dismiss at 12.  However, Plaintiff included "Truth in Lending Claims against 1st and 2nd Deed of Trust Holders against Debtor's residence" on his amended Schedule B, filed on November 26, 2008.  NDCA Bankruptcy Case No. 08-30265, Docket No, 78.  Moreover, Plaintiff's Schedule D listed World Savings, predecessor in interest to Defendant, as holding a mortgage on his residence and the 2007 San Francisco Superior Court lawsuit also named World Savings as a Defendant. As discussed above, the trustee in the 2008 bankruptcy case abandoned the claims at issue in that San Francisco Superior Court lawsuit.  Accordingly, the Court finds that Plaintiff's claims are not barred by judicial estoppel.

III. Time Bar

Defendant next argues that Plaintiff's claims are time-barred because they are based on his allegation that the 2005 note and deed of trust were forged.  Plaintiff admits that he knew of the 2005 note and deed of trust by March 2006.  FAC ¶ 10.  Plaintiff counters that his wrongful foreclosure claim was not ripe for

15

filing until after the foreclosure sale took place. Under California law, "a lender or foreclosure trustee may only be liable to the mortgagor or trustor for wrongful foreclosure if the property was wrongfully or illegally sold under a power of sale contained in a mortgage or deed of trust." Rosenfeld v. JPMorgan Chase Bank, N.A., 732 F. Supp. 2d 952, 961 (N.D. Cal. 2010) (citing Munger v. Moore, 11 Cal. App. 3d 1, 7 (1970)).

However, as Defendant argues, even though Plaintiff seeks damages for violations of the California Civil Code, his claims are based on an argument that the 2005 note and deed of trust are void. A claim for rescission or to cancel a deed of trust is subject to a four year statute of limitations. Cal. Civ. Proc. Code § 337. Accordingly, even assuming the statute of limitations should be tolled until the date Plaintiff admits he became aware of the 2005 note and deed of trust, any claim based on the alleged forgery should have been filed by March 2011.

Accordingly, Plaintiff's wrongful foreclosure claim is dismissed as untimely. Because amendment would be futile, the dismissal is with prejudice. Moreover, as discussed below, Plaintiff fails to state a claim for wrongful foreclosure.

IV. Laches

Defendant next argues that Plaintiff's claims are barred by laches. However, in his opposition to the motion to dismiss, Plaintiff makes clear that he seeks only monetary damages, not equitable relief. As Defendant itself acknowledges, laches bars only claims for equitable relief.

16

V.   Failure to State a Claim

Plaintiff's wrongful foreclosure claim is premised on two statutory requirements.  The first requires that any notice of default include a "statement setting forth the nature of each breach actually known to the beneficiary and of his or her election to sell or cause to be sold the property to satisfy that obligation and any other obligation secured by the deed of trust or mortgage that is in default."  Cal. Civ. Code § 2924(a)(1)(C).  Plaintiff alleges that he "was not in breach under the original Deed of Trust, and Defendant knew that Plaintiff had not authorized the refinance agreement, therefore Plaintiff was not in breach of the original Deed of Trust."  1AC ¶ 21.  However, even assuming Plaintiff's allegations regarding the refinance are true, he does not allege that he has continued to pay any amount due under the original deed of trust or that he is offering to pay that amount.  Plaintiff also does not provide any authority to excuse his nonpayment of that amount.  Accordingly Plaintiff's allegation that he did not breach the original deed of trust is unavailing.

The second statutory requirement is that the notice of default include "all amounts of principal, interest, taxes, assessments, insurance premiums, or advances actually made by beneficiary or mortgagee in accordance with the terms of that obligation or of the deed of trust or mortgage."  Cal. Civ. Code § 2924c(a)(1).  Plaintiff alleges, "As Defendant's Notice of Default reflected an amount in arrears which included an early refinancing penalty and inflated late fees, Defendant's Notice of Default was inaccurate and improper under the Civil Code."  1AC ¶ 22.

17

However, as Defendant argues, Plaintiff's claim for wrongful foreclosure fails because the mailing, publication and delivery of foreclosure notices and the performance of foreclosure procedures are privileged under California law. See Cal. Civ. Code § 2924(d). Moreover, Plaintiff has made clear that he seeks only monetary damages in this suit. However, Plaintiff has failed to allege any damages. As noted above, Plaintiff has not shown that he did not default on his loan obligation under the original deed of trust. Even assuming that Plaintiff is able to prove that the second deed of trust is invalid, his theory is that the original deed of trust should be reinstated. Because Plaintiff failed to make any payments due under the terms of the original loan, he cannot show that he has suffered any monetary damages.

Because amendment would be futile, the dismissal is with prejudice.

## CONCLUSION

For the reasons set forth above, the Court GRANTS Defendant's motion to dismiss (Docket No. 14). Plaintiff's claims are dismissed with prejudice. Defendant shall recover its costs. The clerk shall enter judgment and close the file.

IT IS SO ORDERED.

Dated: 9/5/2014

CLAUDIA WILKEN
United States District Judge